**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KENNETH KERRIGAN et al.,**

                    **Plaintiffs,**            **5:11-cv-1320**
                                               **(GLS/ATB)**

          **v.**

**NEW YORK STATE ELECTRIC &**
**GAS CORPORATION et al.,**

                    **Defendants.**

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Powers, Santola Law Firm          DANIEL R. SANTOLA, ESQ.
39 North Pearl Street             MARGIE A. SOEHL, ESQ.
2nd Floor
Albany, NY 12207-2205

**FOR THE DEFENDANTS:**
_New York State Electric & Gas_
_Corporation_
Pillinger, Miller Law Firm        JEFFREY D. SCHULMAN, ESQ.
507 Plum Street - Suite 120
Syracuse, NY 13204

_Verizon Communications, Inc._
Phillips, Lytle Law Firm          MARC H. GOLDBERG, ESQ.
Omni Plaza
30 South Pearl Street
Albany, NY 12207

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.  Introduction

Plaintiffs Kenneth Kerrigan ("Kerrigan") and Tammy Kerrigan commenced this diversity action against defendants New York State Electric & Gas Corporation (NYSEG), Comcast Corporation,[1] and Verizon Communications, Inc., alleging violations of New York Labor Law §§ 200 and 241(6), as well as a common law claim for negligence and a derivative loss of consortium claim by Tammy Kerrigan.  (*See generally* Compl., Dkt. No. 1.)  Pending before the court are motions for summary judgment by both Verizon, (Dkt. No. 72), and NYSEG, (Dkt. No. 73), as well as a cross motion for summary judgment filed by plaintiffs, (Dkt. No. 81).  For the reasons that follow, Verizon's motion is granted, and the remaining motions are denied.

## II.  Background[2]

This personal injury action arises out of an October 29, 2010 incident

---

[1] Since the commencement of this action, the parties entered a stipulation whereby plaintiffs agreed to withdraw their claim against Comcast and dismiss it as a defendant.  (Dkt. Nos. 63, 64.)  Further, in response to defendants' summary judgment motions, plaintiffs stated that they "withdraw their Labor Law [s]ection 200 and [c]ommon [l]aw negligence claims."  (Dkt. No. 87 at 1.)  Therefore, of plaintiffs' original claims, the only one remaining before the court is one against Verizon and NYSEG pursuant to New York Labor Law § 241(6), premised on defendants' failure to comply with 12 N.Y.C.R.R. § 23-1.29.  (*Id.*)

[2] Unless otherwise noted, the facts are not in dispute.

on Shear Hill Road in Mahopac, New York.  (NYSEG Statement of Material

Facts (SMF) ¶¶ 2-3, Dkt. No. 73, Attach. 2.)  By way of background,

NYSEG and New York Telephone Company, currently known as Verizon,

previously entered into a Rental-Joint Ownership Agreement, which was in

effect at the time relevant to this action.  (Verizon SMF ¶ 1, Dkt. No. 72,

Attach. 14; Dkt. No. 79, Attach. 11.)  That agreement governs the

ownership of certain utility poles as between NYSEG and Verizon, and sets

forth procedures by which NYSEG and Verizon may acquire joint

ownership in new utility poles erected by the other.  (Dkt. No. 79, Attach. 11

at 13-20.)  As relevant here, with respect to the erection of new poles, "joint

ownership [is] deemed to exist" "[u]pon completion of erection of such

poles."  (*Id.* at 16.)

NYSEG and Verizon were joint owners of four utility poles "that were

in the ground and erected at or near the roadway of Shear Hill Road" in

Mahopac.  (NYSEG SMF ¶¶ 122, 124.)  Utility Shared Services

Corporation, an affiliate of NYSEG, had entered into a Master Services

Procurement Agreement with Hawkeye, LLC to erect new utility poles at

this location, (Verizon SMF ¶¶ 8-9; Dkt. No. 77, Attach. 3 at 20-57), and

NYSEG had issued a "Contract Release Order" for the replacement of four

poles by Hawkeye, (Dkt. No. 72, Attach. 11 at 2-4).  On the date in

3

question, Kerrigan, an employee of Hawkeye, (NYSEG SMF ¶ 5), was tasked with going to the site with a "digger truck" and "bucket truck," while hauling telephone poles from a NYSEG yard in Mahopac, (Verizon SMF ¶¶ 27-28), to replace existing utility poles with new poles, (NYSEG SMF ¶ 19). Specifically, the project entailed "spotting poles," which Kerrigan described as "go[ing] out and lay[ing] poles out." (*Id.* ¶ 21-22; Dkt. No. 78, Attach. 6 at 101.) In order to transport the new poles to their ultimate erection site, the crew utilized a trailer attached to the digger truck to haul the poles to the site; the job also involved the use of a bucket truck and the foreman's pickup truck. (NYSEG SMF ¶¶ 37, 38.) The crew used the digger truck to load the trailer with four utility poles, each measuring either forty or forty-five feet in length. (*Id.* ¶¶ 49, 52; Pls.' SMF ¶ 17, Dkt. No. 84.)

The crew for this particular job included Kerrigan, foreman Ben Gardner, lineman Kenneth Vanner, and an apprentice. (Verizon SMF ¶ 26; NYSEG SMF ¶¶ 6, 8.) The crew traveled to its destination in a caravan, with Gardner's pickup truck in front, followed by the digger truck and trailer operated by Vanner, and finally the bucket truck, driven by the apprentice, in which Kerrigan was a passenger. (NYSEG SMF ¶¶ 55-59.) Upon reaching the location where the first pole was to be laid out, the caravan stopped, and dropped one pole off of the trailer. (*Id.* ¶¶ 61-62.) The

4

caravan then proceeded down the road to drop off the second pole. (*Id.* ¶ 63.) After approximately fifty yards, the caravan stopped again, although Kerrigan was not sure why. (*Id.* ¶ 64; Dkt. No. 78, Attach. 6 at 147-49.) Kerrigan got out of his truck, and was told by Vanner to "hold on a minute," so that Vanner could discuss something with Gardner. (Dkt. No. 78, Attach. 6 at 149.) During this time, the crew's trucks were "set up in the road," in the east-bound lane of a two-lane roadway, because the shoulder on the road was "[n]o more than a foot, foot and a half" wide. (*Id.* at 130-40, 143.)

While Kerrigan was standing in the road, "waiting on [Vanner] to come back and tell [him] what was going on," he observed a tractor-trailer approaching them in the west-bound lane. (*Id.* at 150-51.) When the tractor-trailer got approximately even with the crew's location, it stopped in the road because it could not fit underneath power lines that passed above its lane of travel. (*Id.* at 152-54.) The driver of the tractor-trailer then exited his vehicle and asked Kerrigan if the crew could move their trucks, so that he could pass under the power lines in the east-bound lane. (*Id.* at 155-56.) Kerrigan relayed this request to Vanner, who said he would "handle it" and again told Kerrigan to "hold on" while he figured out what to do. (*Id.* at 155.) At that point, Vanner walked off, and two additional cars approached

behind the stopped tractor-trailer in the west-bound lane.  (*Id.* at 156.)

Kerrigan, in an attempt to get a better view of the traffic situation behind the

tractor-trailer, "stepped back from the center of the roadway," to a point

"[b]etween the trailer that held the poles and the digger that pulled the

poles."  (*Id.* at 156-57.)  Unbeknownst to Kerrigan, Vanner had "got back in

the truck[,] put the truck in gear," and began to pull the truck forward.  (*Id.*

at 156-57, 166-67.)  The truck hit Kerrigan, knocked him off balance, and

ran over his ankle, breaking his leg.  (*Id.* at 168-69.)  Plaintiffs subsequently

commenced this action alleging several causes of action against NYSEG

and Verizon.[3]

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

---

[3] As indicated above, *see supra* note 1, plaintiffs stipulated to withdraw their second cause of action, alleging a violation of New York Labor Law § 240, against both NYSEG and Verizon.  (Dkt. No. 64 ¶ 3.)  Additionally, after defendants filed their summary judgment motions, and in their cross motion, plaintiffs withdrew their Labor Law § 200 and common law negligence claims, leaving a sole cause of action pursuant to Labor Law § 241(6).  (Dkt. No. 87 at 1.)

# IV.  Discussion

## A.  New York Labor Law § 241(6)

New York Labor Law § 241(6) applies to "[a]ll contractors and owners and their agents" who are engaged in construction, demolition, and excavation work, and requires that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."  Accordingly, under this statute, "[a] defendant is liable . . . if the defendant violated a safety regulation that set forth a specific standard of conduct, and . . . the violation was the proximate cause of [the plaintiff's] injuries."  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014) (internal quotation marks and citation omitted).  As relevant here, the statute only applies as a basis for liability if one or more defendants is an "owner," and Kerrigan was engaged in "construction."

### 1.  *"Owner" under Labor Law § 241(6)*

As an initial matter, Verizon argues that it is entitled to summary judgment dismissing Kerrigan's claims—and NYSEG's cross claims—against it because it was not an "owner" within the meaning of the

7

Labor Law.  (Dkt. No. 72, Attach. 13 at 11-14.)  Both NYSEG and Kerrigan

oppose this portion of Verizon's argument, asserting that Verizon's joint

ownership in the existing poles subjects it to liability with respect to

Kerrigan's setting of the new poles.  (Dkt. No. 87 at 24-25; Dkt. No. 93,

Attach. 1 at 1-4.)  For the following reasons, the court agrees with Verizon

and grants it summary judgment, dismissing the claims against it.

"Labor Law § 241(6) imposes a nondelegable duty on owners and

contractors to comply with the Commissioner of Labor's regulations."

*Morton v. State*, 15 N.Y.3d 50, 55 (2010).  While a plaintiff is not required to

"show that defendants exercised supervision or control over his worksite in

order to establish his right of recovery" under § 241, New York courts "have

consistently held that ownership of the premises where the accident

occurred—standing alone—is not enough to impose liability under Labor

Law § 241(6) where the property owner did not contract for the work

resulting in the plaintiff's injuries; that is, ownership is a necessary

condition, but not a sufficient one."  *Id.* at 55-56 (internal quotation marks

and citation omitted).  In other words, in order to establish owner liability

under Labor Law § 241(6), New York courts "require[ ] . . . some

connection, or 'nexus,' between the owner and the plaintiff."  *Id.* at 60

(internal quotation marks and citation omitted).

Here, NYSEG stipulated that it owned the poles on the truck that were being transported and spotted by Kerrigan in the course of his assignment, and that, "[o]n the date of [Kerrigan]'s [a]ccident, Verizon did not own the utility poles on the truck." (Dkt. No. 65 ¶¶ 2-3.) This is consistent with NYSEG and Verizon's agreement, which dictated that Verizon did not obtain any ownership interest in NYSEG's poles until they were fully erected, which had not yet occurred here. (Dkt. No. 79, Attach. 11 at 16.) Therefore, because Verizon was not an owner of the premises or the poles being spotted, dismissal of the claims against Verizon is appropriate. *See Mangiameli v. Galante*, 171 A.D.2d 162, 164 (3d Dep't 1991).

Consequently, Kerrigan and NYSEG argue that Verizon could be liable as a "contract vendee." (Dkt. No. 87 at 24-25; Dkt. No. 93, Attach. 1 at 2-4.) While it is true that "the definition of 'owners' under [§ 241] has not been limited to the titleholder," and "has been held to encompass a person who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his [or her] benefit," *Alexander v. Hart*, 64 A.D.3d 940, 942 (3d Dep't 2009) (internal quotation marks and citations omitted), such circumstances are not present here, as there is no evidence indicating that Verizon acted in the capacity of an owner by

contracting with Hawkeye to perform the work.  Instead, the record

demonstrates that it was NYSEG that hired Hawkeye to complete the job.

(Dkt. No. 72, Attach. 8 at 9-10; Dkt. No. 72, Attach. 11 at 2-4; Dkt. No. 77,

Attach. 3 at 20, 27.)  In fact, NYSEG admitted that it did not consult Verizon

before hiring Hawkeye to perform the work, did not notify Verizon of the

work, and that Verizon had no authority to supervise, direct, or control the

work, or to fire Hawkeye.  (Dkt. No. 72, Attach. 8 at 5-8.)  Verizon did not

contract for the work to be performed, and there is no indication that it even

knew that Hawkeye, and thus Kerrigan, had been hired to do the work.

*See Ceballos v. Kaufman*, 249 A.D.2d 40, 40 (1st Dep't 1998) (affirming

the entry of summary judgment dismissing Labor Law claims where "none

of [the] defendants hired, or even knew of the retention of, the . . .

contractor in whose employment [the] plaintiff was at the time of the

accident giving rise to the within action").  The fact alone that Verizon may

have ultimately benefitted from the work being performed is "legally

irrelevant to determining whether the Labor Law imposes a nondelegable

duty."  *Morton*, 15 N.Y.3d at 58 (internal quotation marks and citation

omitted).  Thus, there is no basis to hold Verizon liable as an "owner" with

respect to the placement of the new poles in which it did not yet have an

ownership interest and did not contract to deliver and set.[4]  *See Ackley v. N.Y. State Elec. & Gas Corp.*, 8 A.D.3d 941, 942 (3d Dep't 2004) (affirming dismissal of Labor Law § 241(6) cause of action where the "defendant was not the owner of the telephone box being altered or the telephone line being added[,] and did not otherwise act in the capacity of an owner with respect to the equipment being utilized or the work being performed.") Accordingly, Verizon's motion for summary judgment is granted, and both plaintiffs' claims and NYSEG's cross claims against it are dismissed.

   2.   *"Construction" under Labor Law § 241(6)*

   NYSEG next argues that Labor Law § 241(6) is inapplicable to the facts of this case because Kerrigan's accident and/or injury did not occur in connection with construction, demolition, or excavation work as required by the Labor Law.  (Dkt. No. 73, Attach. 3 at 8-10.)  Specifically, NYSEG argues that, at the moment Kerrigan was injured, when the truck ran over

───────────────────

   [4] Kerrigan makes an additional argument that, pursuant to the Verizon-NYSEG agreement, when a jointly-owned pole needed to be replaced, either Verizon or NYSEG could undertake the work, and the party accepting the proposed work—here, Verizon—authorizes the other to perform the work on its behalf, creating an agency relationship.  (Dkt. No. 87 at 24-25.)  However, "'[o]nly upon obtaining the authority to supervise and control does [a] third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241.'"  *Pollack v. Safeway Steel Prods., Inc.*, 457 F. Supp. 2d 444, 451 (S.D.N.Y. 2006) (quoting *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 318 (1981)).  This argument may be summarily dismissed, as NYSEG has admitted that Verizon had no authority to supervise and control Hawkeye's performance of the work associated with this project.  (Dkt. No. 72, Attach. 8 at 6.)

his leg, he was not engaged in any "construction" and, instead, was simply assessing the situation with respect to the oncoming traffic.  (*Id.*)  In response, Kerrigan argues that the nature of the project in which he was engaged constituted "construction" because it was an "integral and necessary part" of an overall construction project.  (Dkt. No. 87 at 6-9.) The court agrees with Kerrigan.

"Liability under Labor Law § 241(6) is not limited to accidents on a building construction site."  *Joblon v. Solow*, 91 N.Y.2d 457, 466 (1998). Instead, courts "look to the regulations contained in the Industrial Code (12 NYCRR 23-1.4 [b] [13]) to define what constitutes construction work within the meaning of the statute."  *Id.*  That regulation defines "[c]onstruction work" as:

> All work of the types performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures, whether or not such work is performed in proximate relation to a specific building or other structure and includes, by way of illustration but not by way of limitation, the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, cleaning of the exterior surfaces including windows of any building or other structure under construction, equipment installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose.

12 N.Y.C.R.R. § 23-1.4(b)(13).  New York state caselaw has expanded

further on this definition, including within the purview of the statute work that is an "integral part" to a construction project.  *See McGuinness v. Hertz Corp.*, 15 A.D.3d 160, 161 (1st Dep't 2005).  The New York Court of Appeals has instructed that Labor Law § 241 (6) "covers industrial accidents that occur in the context of construction."  *Nagel v D & R Realty Corp.*, 99 N.Y.2d 98, 103 (2002); *see Gonnerman v. Huddleston*, 78 A.D.3d 993, 995 (2d Dep't 2010) ("Labor Law § 241(6) extends to areas where materials or equipment are being readied for use."); *Brogan v. Int'l Bus. Machines Corp.*, 157 A.D.2d 76, 79 (3d Dep't 1990) (holding that the Labor Law applies when "the activity out of which the accident arose was an expressly integral part of the construction contract," in that the work is "necessitated by and incidental to the construction, and involve[s] materials being readied for use in connection therewith").

Here, NYSEG argues that, at the time of his accident, Kerrigan was not in a construction area, nor was he engaged in a construction project as contemplated by the Labor Law, because Kerrigan "did not believe he was in the area where construction was to be performed," and it was not his "responsibility to erect the poles," but rather he was simply spotting the poles that would ultimately be erected.  (Dkt. No. 73, Attach. 3 at 9-10.) Further, NYSEG asserts that, because "[t]he caravan was not at the next

drop location and [Kerrigan] did not know where the next drop was designated," he was not in a construction area.  (*Id.* at 10.)  However, this narrow view of the circumstances of the injury does not comport with the governing caselaw.

As one New York court has explained, "the relevant inquiry [in defining 'construction' under the Labor Law] is not whether the plaintiff picked up a tool to effect a repair, but whether he had been hired to take any part in the . . . work."  *Campisi v Epos Contracting. Corp.*, 299 A.D.2d 4, 8 (1st Dep't 2002).  In other words, "the statute may be applicable despite the fact that the particular job being performed at the moment plaintiff was injured did not in and of itself constitute construction."  *Id.* at 6 (internal quotation marks and citation omitted).  It is undisputed here that Kerrigan and his crew were engaged in the process of "spotting poles" that would ultimately be erected at the general location where they were dropped.  (NYSEG SMF ¶¶ 5, 16-17, 19, 21-22; Pls.' SMF ¶¶ 10, 12-13.) This is, logically, "an expressly integral part of the construction contract," because it was "necessitated by and incidental to" the ultimate erection of the new poles, and undoubtedly "involved materials being readied for use in connection therewith."  *Brogan*, 157 A.D.2d at 79.

The fact that, at the very second Kerrigan was injured, he was not

actively performing work, or whether or not he believed the caravan had stopped so it "could perform its work," (Dkt. No. 73, Attach. 3 at 10), is of no moment, as it is clear that the crew was acting in the course of its job of laying out poles, even though at that moment Kerrigan may have been observing potential oncoming traffic, and may or may not have been at the exact location of the second pole drop.  *See Gowans v. Otis Marshall Farms, Inc.*, 85 A.D.3d 1704, 1705 (4th Dep't 2011) (reversing dismissal of Labor Law claim because "[i]t is not necessary that an employee be actually working on his [or her] assigned duties at the time of the injury" (internal quotation marks and citations omitted)); *Brogan*, 157 A.D.2d at 79 ("[T]he lack of proximity between the place of accident and the precise location of construction is not dispositive against Labor Law liability for injuries to workers handling construction materials and equipment.") Accordingly, the court finds that the Labor Law applies to the circumstances of this case, and declines to grant NYSEG summary judgment on this basis.

## B.   New York Industrial Code Rule 23-1.29

NYSEG argues that the provision of the Industrial Code relied on by Kerrigan as a basis for his Labor Law claim is inapplicable to the facts of this case, and therefore cannot be a basis for liability.  (Dkt. No. 73, Attach.

3 at 12-15.)  Specifically, NYSEG asserts that the provision cited by Kerrigan only protects construction workers from "public vehicular traffic," and, because he was struck by a vehicle involved in the construction project, he was not harmed by "public vehicular traffic."  (*Id.* at 13-15.)  In response, Kerrigan argues that the regulation is applicable here, and that the caselaw cited by NYSEG does not support its more narrow interpretation of the regulation.  (Dkt. No. 87 at 11-19.)  Again, the court agrees with Kerrigan and declines to grant NYSEG summary judgment on this basis.

A cause of action pursuant to Labor Law § 241(6) "require[s] reference to outside sources to determine the standard by which a defendant's conduct must be measured."  *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 503 (1993) (internal quotation marks and citation omitted).  With respect to causes of action brought pursuant to the Labor Law, these standards are found in those "provisions of the Industrial Code mandating compliance with concrete specifications."  *Id.* at 505.  Interpretations of Industrial Code regulations and determinations as to whether a particular condition is within the scope of the regulation are questions of law for the court.  *See Penta v. Related Cos.*, 286 A.D.2d 674, 675 (2d Dep't 2001).

16

Kerrigan relies on Industrial Code rule 23-1.29 for the standard by which defendants' conduct should be measured here.  (Dkt. No. 87 at 1.) That rule provides that:

> Whenever any construction, demolition or excavation work is being performed over, on or in close proximity to a street, road, highway or any other location where public vehicular traffic may be hazardous to the persons performing such work, such work area shall be so fenced or barricaded as to direct such public vehicular traffic away from such area, or such traffic shall be controlled by designated persons.

12 N.Y.C.R.R. § 23-1.29(a).  NYSEG does not argue that it complied with this regulation here, nor does there appear to be any evidence that would support such an argument; instead, it argues that this rule is inapplicable to the facts of this case, because Kerrigan was not directly struck by a "public" vehicle, meaning a vehicle other than one involved in the project.  (Dkt. No. 73, Attach. 3 at 12-15.)  Specifically, NYSEG asserts that "where a plaintiff is injured by the operation of a co-worker or employer's vehicle, there is no violation of § . . . 23-1.29(a)."  (*Id.* at 15.)

However, the plain language of the regulation indicates that the enumerated steps of barricading the area or controlling traffic with a designated person are to be taken "[w]henever any construction . . . work is being performed . . . in close proximity to . . . any . . . location where public vehicular traffic *may be hazardous* to the persons performing such work."

12 N.Y.C.R.R. § 23-1.29(a) (emphasis added).  Thus, the applicability of the regulation appears to depend on the potential hazards created by the proximity of public traffic to a work area, and NYSEG has not cited any authority which expressly holds that the identity of the vehicle which strikes the plaintiff is dispositive.  *See Gonnerman*, 78 A.D.3d at 995 (applying § 23-1.29 even where there was "no evidence that [the plaintiff's work on a highway exit ramp] interfered with the traffic flow," because it was "in 'close proximity' to a . . . location where public vehicular traffic may be hazardous to the persons performing such work"); *McGuinness*, 15 A.D.3d at 161 (holding that this regulation was applicable because the work at issue "was performed 'on or in close proximity to a street'"); *Henry v. 170 E. End Ave., LLC*, 2012 N.Y. Slip Op. 31673 (Sup. Ct. N.Y. Cnty. June 21, 2012) (denying the defendants' summary judgment motion on a claim premised on a violation of 12 N.Y.C.R.R. § 23-1.29, and finding that provision applicable where, as here, the plaintiff was struck by a vehicle involved in the construction project, and the record indicated that the vehicle accelerated in order to avoid an approaching vehicle that was not involved in the construction project).  Neither the plain language of the regulation nor the caselaw referenced by NYSEG supports its assertion that this regulation can never apply "[w]here a plaintiff is struck by a vehicle

operated by a co-worker or another contractor." (Dkt. No. 73, Attach. 3 at 13.)

Here, it is clear that the work was being performed in close proximity to a street, in a location where public vehicular traffic may have posed a hazard. Kerrigan testified that all three trucks were parked "in the road," as the shoulder was "[n]o more than a foot, foot and a half" wide, and thus they could not get the trucks out of the roadway. (Dkt. No. 78, Attach. 6 at 143.) Gardner wanted to unload the poles quickly "[b]ecause [the crew was] set up in the road" and was blocking one lane of travel on the two-lane road. (*Id.* at 139-40.) Ultimately, Vanner moved the digger truck without telling Kerrigan that he was going to do so. (*Id.* at 166-67.) Although NYSEG argues that the "public vehicular traffic" here posed no hazard because it was stopped at the time of the injury, (Dkt. No. 73, Attach. 3 at 15), there is evidence indicating that the crew undertook to move the digger truck and attached trailer, which ultimately struck Kerrigan, in direct response to the tractor-trailer driver's request, and in order to clear the way for the stopped public traffic to pass through. (Dkt. No. 78, Attach. 6 at 155-58.) Accordingly, because the work here was being performed "in close proximity" to a roadway over which public vehicular traffic was traveling and thus "may be hazardous," 12 N.Y.C.R.R. § 23-1.29(a),

19

Industrial Code rule 23-1.29 applies here, and NYSEG's summary judgment motion on this basis is denied.

**C.   Causation and Contributory Negligence**

Lastly, Kerrigan argues that he is entitled to summary judgment on liability because he has established a prima facie cause of action, (Dkt. No. 87 at 19-21), while NYSEG argues that the court should grant summary judgment in its favor because Kerrigan's "own actions are the sole proximate cause of his accident," (Dkt. No. 73, Attach. 3 at 23-25).  The court is unable to decide this issue as a matter of law, and therefore summary judgment is inappropriate for either party at this juncture.

"[O]nce it has been alleged that a concrete specification of the [Industrial] Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury."  *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 350 (1998).  "If proven, the general contractor (or owner, as the case may be) is vicariously liable without regard to his or her fault."  *Id.* Importantly, "a breach of a duty imposed by a regulation promulgated under Labor Law § 241(6) is merely some evidence of negligence," as opposed to, for example, a breach of Labor Law § 240, which "leads to 'absolute' liability."  *Ross*, 81 N.Y.2d at 502 n.4.  Accordingly,

"[c]omparative negligence is a defense to claims raised under § 241(6)."

*Pollack v. Safeway Steel Prods., Inc.*, 457 F. Supp. 2d 444, 450 (S.D.N.Y.

2006); *see Wojcik v. 42nd St. Dev. Project, Inc.*, 386 F. Supp. 2d 442, 453

n.12 (S.D.N.Y. 2005) ("[B]ecause absolute liability is not imposed by proof

of a violation of the regulations promulgated under § 241, contributory and

comparative negligence are viable defenses to § 241(6) claims.").

Simply stated, there is a question of fact regarding the causation of

Kerrigan's injury, and/or any comparative or contributory negligence on his

part, that is best decided by a jury here.  Although NYSEG's failure to

comply with § 23-1.29 may be "some evidence of negligence," *Ross*, 81

N.Y.2d at 502 n.4, NYSEG points to evidence from which a finder of fact

could reasonably conclude that Kerrigan's own conduct contributed to his

injury—for example, that he was told by Vanner to "hold on a minute"

before doing anything but went into the road anyway, (Dkt. No. 78, Attach.

6 at 149), he acknowledged that there may have been a better way to

observe oncoming traffic, (*id.* at 165), and he could not remember whether

he was wearing a reflective vest that had been provided to him at the time

of the accident, (*id.* at 128).  (Dkt. No. 73, Attach. 3 at 24-25.)  Defendants

are therefore not entitled to summary judgment on the basis that Kerrigan's

comparative negligence was the "sole proximate cause" of his injury, nor is

Kerrigan entitled to a ruling at this juncture that he was not comparatively negligent as a matter of law.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Verizon's motion for summary judgment (Dkt. No. 72) is **GRANTED** and all claims by Kerrigan and cross claims by NYSEG against Verizon are **DISMISSED**; and it is further

**ORDERED** that NYSEG's motion for summary judgment (Dkt. No. 73) is **DENIED**; and it is further

**ORDERED** that Kerrigan's cross motion for summary judgment (Dkt. No. 81) is **DENIED**; and it is further

**ORDERED** that all causes of action except for that based on Labor Law § 241(6) and 12 NYCRR § 23-1.29 are **DISMISSED**; and it is further

**ORDERED** that this case is trial ready and that the Clerk issue a trial scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

22